UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL FAIR HOUSING ALLIANCE; FAIR HOUSING JUSTICE CENTER, INC.; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; FAIR HOUSING COUNCIL OF GREATER SAN ANTONIO, <br><br>      Plaintiffs, <br><br> v. <br><br>FACEBOOK, INC., <br><br>      Defendant. | Index No: 18 Civ. 2689 <br><br>**RULE 26(F) REPORT** <br>Initial Case Management Conference <br>May 7, 2018 |

**Nature and Basis of Claims (Plaintiffs' Statement)**

  Plaintiffs are four nonprofit organizations with the common mission of eliminating housing discrimination and promoting residential integration. On March 27, 2018, Plaintiffs commenced this action against Defendant Facebook, Inc. for violations of the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*. and the New York City Administrative Code § 8-107 *et seq*. in its discriminatory online real estate advertising practices. Plaintiffs seek declaratory and injunctive relief, compensatory damages for diversion of resources and frustration of mission caused by Defendant's unlawful practices, punitive damages, and attorneys' fees and costs.

  Facebook has created an advertising platform that allows businesses and individuals to pay Facebook to display ads for housing for sale or rent to Facebook users. In late 2017 and early 2018, Plaintiffs investigated Facebook's housing advertising practices. Facebook develops and provides its advertisers with a pre-populated list of hundreds of demographics, behaviors, and interests (the "Facebook Pre-Populated List"). Advertisers scroll through this Facebook-created content and select which characteristics they would like to "include" and which they would like

"exclude" from the ad's audience. Then Facebook reviews, approves and permits advertisers to publish these ads. Facebook uses its own algorithms to ensure the ad does not reach any persons the advertiser has chosen to "exclude." Potential housing consumers never even know they are excluded.

Using the Facebook Pre-Populated List, Plaintiffs created dozens of housing advertisements and completed Facebook's full ad submission and review process. Plaintiffs' investigations in New York, Washington D.C., Miami, and San Antonio confirm that Facebook provides the option for advertisers to exclude families with children and women from receiving advertisements. Between December 14, 2017 and February 23, 2018, Facebook accepted for publication forty advertisements from Plaintiffs that were created using the Facebook Pre-Populated List and excluded potential home seekers on the basis of family status and/or sex. Plaintiffs also created ads, and Facebook accepted them, through the Facebook Pre-Populated List based on "interest" categories, permitting a landlord or real estate firm to exclude users from receiving ads based on disability-related factors (for example, by checking the pre-populated category of "Interest in Disabled Parking Permit") and national origin-related factors (for example, "Interest in Telemundo").

Facebook's conduct violates the Fair Housing Act, which holds both publishers and advertisers liable for discriminatory advertising. *See Ragin v. New York Times*, 923 F.2d 995 (2d Cir. 1991). Facebook will not succeed on its proposed motion to dismiss claiming that its discriminatory practices are protected by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. By creating the Facebook Pre-Populated List, and providing it to advertisers as a means to include and exclude protected classes of homeseekers, Facebook materially contributes to ongoing violations of the Fair Housing Act through its advertising platform. *See Fair Hous.*

*Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc); *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 176 (2d Cir. 2016).

**Nature and Basis of Defenses (Facebook's Statement)[1]**

Facebook, Inc. ("Facebook") operates an online platform that allows people to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them through Facebook's website and mobile app.  Facebook is free of charge to users, and is instead supported through ads placed on Facebook by third-party advertisers.  Advertisers using traditional media, such as print and television, target ads in ways that are most likely to reach people who are interested in the products or services they are offering, *e.g.*, running ads for cosmetics and women's clothing in Vogue, ads for men's athletic shoes in Sport's Illustrated, and commercials for toys during Sesame Street.  On Facebook, advertisers may choose to do the same by using self-serve tools that allow (but do not require) them to target ads based on thousands of user segments and interests as expressed through their activities on Facebook.

Plaintiffs bring this action based on allegations that, in addition to using these self-serve tools for the commonplace practice of targeting ads for clothing, toys and other products and services to women, men, and parents, some advertisers *may* be using these same tools to exclude women and/or parents from receiving housing ads in violation of the Fair Housing Act and related New York laws.  Plaintiffs do not identify any housing ad that has been targeted in this way, except for the test ads they placed in preparing to file this action.  But even assuming that advertisers have created such ads on Facebook, Plaintiffs' claims against Facebook are barred by

---

[1] Facebook reserves all rights, including defenses and objections as to venue and personal jurisdiction; the filing of this Joint Report is subject to, and without waiver of any such defenses and objections.

Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. 230, which provides immunity to websites based on the publication of third-party content.

Facebook plans to file a motion to dismiss on this and other grounds, including lack of personal jurisdiction, lack of standing and failure to state a claim.  In accordance with the Local Rules and the Individual Rules of Practice of this Court, Facebook plans to file a letter motion for a pre-motion conference to be held in advance of filing this motion.

Facebook also plans to file a motion to transfer venue to the United States District Court for the Northern District of California where another action concerning the same subject matter and theories of liability, and asserting claims under the Fair Housing Act, was filed in late 2016 and is currently pending.  *Onuoha v. Facebook, Inc.*, No. 5:16-cv-06440-EJD.

## Discovery: Initial Disclosures, Topics and Schedule

**Plaintiffs' Statement**

1. This case is to be tried to a jury.

2. Disclosures pursuant to Fed.R.Civ.P. 26(a) shall be exchanged by June 18, 2018.

3. The parties shall serve written discovery requests, including interrogatories and requests for production of documents no later than July 18, 2018.

4. No additional parties may be joined after September 7, 2018.

5. No pleading may be amended after September 7, 2018.

6. All non-expert discovery must be completed by April 19, 2019

7. All requests for admission shall be served no later than April 19, 2019.

8. Expert disclosures conforming with Fed.R.Civ.P. 26 must be made no later than the following dates:  Plaintiffs expert report(s) by May 20, 2019; Defendants expert report(s) by June 20, 2019.

9. Expert depositions shall be completed no later than July 19, 2019.

10. If no experts are named by any party, then dispositive motions are due no later than May 20, 2019. If experts are named by any party, then dispositive motions are due no later than August 12, 2019.

Plaintiffs proposed the above schedule to Defendant on April 23, 2018. Defendant has declined to confer about the schedule in light of its proposed motions. But a stay of discovery is far from automatic in this case. In this District, courts will consider the following factors in evaluating a party's request for a discovery stay: (1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion. *O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709, 2018 WL 1989585, at *4 (S.D.N.Y. Apr. 26, 2018). With respect to the "strength of the motion" prong, the party seeking a stay must present "substantial arguments for dismissal." *Id.* Here, Facebook is unlikely to win its motion to dismiss under the CDA. Facebook developed the Facebook Pre-Populated List that allows advertisers to exclude on the basis of gender, family size, and interests that serve as proxies for protected characteristics. By including categories that serve no lawful purpose in its advertising platform, Facebook is stripped of "immunity." Moreover, once housing advertisers select these banned characteristics, Facebook carries out the discrimination by using its algorithms to comply with an advertiser's discriminatory selections. Facebook's claim that it obtained a stay in a different class action discrimination case filed against it in the Northern District of California is not on point. For one thing, the standard for a stay in the Ninth Circuit does not involve a preliminary analysis of the merits of the motion, as here in the Second Circuit. Plaintiffs are prepared to vigorously oppose any proposed motion to stay, particularly here where Plaintiffs are prejudiced by Facebook's ongoing civil rights violations and the putative motion to dismiss is itself likely to fail.

**Facebook's Statement**

Discovery should be stayed pending resolution of Facebook's anticipated motion to dismiss asserting, among other case-dispositive arguments, that Plaintiffs' claims are barred by Section 230 of the CDA, which grants Facebook immunity, not only from liability, but also from the burdens of litigation, including discovery.  As a result, "initial disclosures are not appropriate in this action," Fed. R. Civ. Proc. 26(a)(1)(C), and it is premature to define the scope of discovery, if any, or issue a scheduling order setting deadlines.

As an immunity statute, the CDA is meant to protect defendants "not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Roommates*, 521 F.3d at 1174-75.  Thus, "[s]ection 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).  As the Supreme Court has held in the analogous qualified immunity context, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  For that reason, courts routinely stay discovery when a defendant asserts a CDA immunity defense in a motion to dismiss.

Indeed, discovery has been stayed on this ground in the *Onuoha* case, which, as noted above, asserts claims under the Fair Housing Act based on the same subject matter and theories of liability as this action, pending resolution of Facebook's motion to dismiss asserting immunity under the CDA.  *See Onuoha v. Facebook, Inc.*, No. 5:16-cv-06440-EJD, ECF No. 35, at 1-2 (N.D. Cal. April 7, 2017) (staying discovery given that "§ 230 'must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles'" and "if Facebook prevails on its § 230 argument, all of Plaintiffs' claims will be dismissed").  Jurisdictions across the country routinely do the same, recognizing the principles of

immunity embodied in the CDA. *See, e.g.*, *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 425 (1st Cir. 2007) (affirming stay of all discovery); *Doe v. Bates*, 2006 WL 3813758, at *10 (E.D. Tex. 2006) ("fundamental purpose[] of [CDA] immunity" is to "insulate service providers … from the burdens of litigation, including those associated with discovery"); *Fields v. Twitter, Inc.*, No. 3:16-cv-00213-WHO, ECF No. 28 (N.D. Cal. Apr. 7, 2016) ("discovery stay is appropriate" pending resolution of motion to dismiss based on CDA immunity); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 1998 WL 896459, at *2–3 (D.N.M. Feb. 3, 1999) (CDA is a "congressionally mandated special immunity" that "free[s]" websites "from the burdens of discovery"), *aff'd*, 206 F.3d 980, 987 (10th Cir. 2000).

Facebook plans to file a motion to stay discovery on these grounds, and, in accordance with the Local Rules and the Individual Rules of Practice of this Court, Facebook will file a letter motion for a pre-motion discovery conference to be held in advance of filing that motion.

## Electronically Stored Information

The Parties agree to negotiate a protocol for discovery of electronically stored information ("ESI"). The Parties are not aware of any specific issues at this time relating to disclosure or discovery of ESI. They agree to address any such issues in the event they arise.

## Claims of Privilege or Protection

Given that disclosure of personal information, confidential business information, trade secrets, and other sensitive material may become necessary in this action, the Parties anticipate submitting a proposed stipulated protective order to the Court for approval.  The Parties do not anticipate any issues relating to claims of privilege or of protection as to trial-preparation material.  They agree to address any such issues in the event they arise

**Limitations on Discovery**

The Parties consent and agree, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), that service may be made by electronic mail, with copies sent to all attorneys of record for the Party served. The Parties currently do not anticipate that any changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules, and currently do not request that other limitations be imposed.

| | |
|---|---|
| Dated: May 4, 2018 | Respectfully Submitted, |
| EMERY CELLI BRINCKERHOFF & ABADY LLP | MUNGER, TOLLES & OLSON, LLP |
| By: _____**/s/ Diane L. Houk____ | By: ___/s/ Rosemarie T. Ring ____ |
| Diane L. Houk<br>Katherine Rosenfeld<br>David B. Berman<br>600 Fifth Avenue, 10th Floor<br>New York, New York 10020<br>Telephone: (212) 763-5000 | Rosemarie T. Ring<br>Jonathan H. Blavin<br>Joshua Patashnik<br>Elizabeth A. Kim<br>Munger, Tolles & Olson LLP<br>560 Mission St., 27th Floor<br>San Francisco, California 94105<br>Telephone: (415) 512-4000 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant Facebook, Inc.* |

**Pursuant to the ECF Rules for the Southern District, the electronic signatory has obtained approval from this signatory.