UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL FAIR HOUSING ALLIANCE; FAIR HOUSING JUSTICE CENTER, INC.; HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC.; FAIR HOUSING COUNCIL OF GREATER SAN ANTONIO,

          Plaintiffs,

v.

FACEBOOK, INC.,

          Defendant.

No: 18 Civ. 2689 (JGK)

## DECLARATION OF FRED FREIBERG IN OPPOSTION TO DEFENDANT'S MOTION TO TRANSFER VENUE, OR ALTERNATIVELY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

FRED FREIBERG declares, under penalty of perjury, that the following is true and correct:

1. I am one of the co-founders and the current Executive Director of the Fair Housing Justice Center ("FHJC"), a Plaintiff in this action. I have worked in the fair housing field for more than forty years across the country. During that time, I worked for seven years at the United States Department of Justice where I created and directed the Department's fair housing testing program. I have worked on four national testing studies of housing markets across the country and have testified as a witness at depositions and trials in more than fifty fair housing cases in federal and state court.

2. I submit this declaration in opposition to Defendant Facebook Inc.'s motion to transfer venue, or alternatively to dismiss Plaintiffs' First Amended Complaint.

3. FHJC is a private nonprofit corporation located at 30-30 Northern Boulevard,

1

Long Island City, New York, 11101. FHJC's mission is to ensure that all people have equal access to housing opportunities in the New York City region by eliminating housing discrimination and promoting policies that foster open, accessible, and inclusive communities.

4. FHJC serves all of New York City and seven surrounding New York Counties, the most populated area served by any local fair housing organization in the country with 65% of New York State's population and over 3% of the nation's total population.

5. The FHJC opened its doors in 2005, at a time when New York City, the largest City in the United States, did not have any fair housing organization. FHJC's public education activities, complaint assistance, testing and other investigative work, and policy advocacy provide an essential service to a metropolitan area that is one of the most racially segregated in the country.

6. One of the critical tools available for the FHJC to use in its work is the substantive and procedural protections provided by the NYCHRL. While I am not an attorney, I am familiar with the details of the NYCHRL and advocate for its vigorous enforcement. Having a strong local anti-discrimination law, such as the NYCHRL, which is enforced through both a local administrative process and in court provides a meaningful mechanism for the local resolution of housing discrimination complaints. Based on my years of working in fair housing in general and my 14 years in New York City, I believe it matters to New Yorkers that the NYCHRL is enforced by New York judges and juries; and it makes a difference for the members of local communities with strong anti-discrimination laws, such as New York, to enforce those laws themselves to reduce housing discrimination and segregation that adversely impacts them on a daily basis.

7. Litigating this case in the Northern District of California instead of the Southern

District of New York would also be a hardship for FHJC's limited resources.

**Burden Imposed on FHJC Employees**

8. FHJC only has ten full-time and two part-time employees.

9. At least two of FHJC's employees would be witnesses in this case. I would be a witness to testify about the organization's frustration of mission caused by Facebook's unlawful discrimination and FHJC's diversion of resources to combat Facebook's conduct. Another FHJC employee, who performed the investigation described in Paragraphs 97-102 of the First Amended Complaint, would also testify as a fact witness regarding the findings of FHJC's investigation.

10. If the case remains in New York, these witnesses will not have to travel at all to participate in the litigation (for example, depositions, court hearings or settlement conferences), and would be able to participate without spending significant time out-of-the-office.

11. Direct flights between New York and San Jose are between five and-a-half and six and-a-half hours each way. Additional time would be needed to travel to and from New York area airports and rental cars would be needed once in San Jose. FHJC employees would not be able to testify and participate in the litigation without spending at least three days out of the office, as simply traveling to and from San Jose requires two full travel days.

**FHJC's Financial Burden**

12. FHJC's annual budget is $1,600,000.

13. Approximately 52% of that $1.6 million consists of grants and contracts that restrict the use of funds to certain activities. The remainder of the budget provides matching funds as required by various grants for use to implement the grant activities or is allocated to pay the salaries, fringe benefits, and administrative costs of current staff that is not fully funded by

grants or contracts. In addition, much of the funds received from settlements are used to implement the terms of the settlements and monitor the defendants' compliance with those agreements. If those funds are used for litigation related costs, such as travel in this case, then FHJC will not be able to fully implement or monitor these agreements which is essential to ensuring that housing units within FHJC's service area are available for rent and sale in a non-discriminatory matter.

14. If this case is transferred from New York City to San Jose, FHJC will take on increased expenses due to the need to pay for employees' flights and hotels, as well as expenses such as meals and renting a car.

15. While the exact cost of these expenses will largely depend on factors such as the time of year, the day of the week, how far in advance the flights and hotels are booked, and whether there are other events in the area affecting the price, FHJC estimates a cost of between $2,000 and $3,000 each time two employees will need to travel to San Jose to testify at trial, be deposed, or attend mediation and court conferences.

16. This additional cost, which it would not incur if this case remains in the Southern District of New York, will impose a burden on the organization's limited resources for litigation-related travel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 21, 2018
New York, New York

_____
FRED FREIBERG